[Civ. No. 14709. Second Dist., Div. Two. Dec. 20, 1944.]

Estate of ALFRED NEWMARK, Deceased. THE FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Executor, etc. et al., Respondents, v. RUBY W. ANDERSON, Appellant.

W. L. Engelhardt for Appellant.

Jerry Giesler and Meyer M. Willner for Respondents.

MOORE, P. J.—Contestant appeals from the order authorizing the compromise of a debt by the executor. She grounds her appeal upon the proposition that the evidence does not show that the compromise is to the best interest of the estate.

Contestant is the widow of decedent Alfred Newmark who created a testamentary trust with respondent, The Farmers and Merchants National Bank of Los Angeles, as trustee. He nominated the same bank as executor of his estate. Among the assets of the estate is a promissory note which at the time of its execution on February 18, 1932, was for the principal sum of $70,000. Payments upon it had been made until the time of the hearing when the balance due was $43,923.24. The note was executed by the Kaspare Cohn Company, Ltd., herein referred to as Cohn Company.

The petition for authority to compromise alleges that the note was secured by a trust established by the Cohn Company on May 1, 1935. The maturity date of the note had been extended to May 1, 1940, and had been guaranteed by the joint and several indorsements of the following persons: Ben R. Meyer, Ray C. Meyer, Milton E. Getz, Estelle C. Getz. The amount which had been agreed upon by the executor and the Cohn Company in discharge of the latter's liability was the sum of $1,164.23. The reasons which it assigned for its decision to compromise were (1) that in the event of liquidation

of the assets held in the trust, executor would receive substantially less than the compromised sum; (2) that the possibility of collecting from the guarantors was remote and doubtful; (3) in the event of litigation to enforce payment the cost of such litigation weighed against the possibility of recovery would be prohibitive.

The only objection to the compromise was made by the widow of decedent, who is now Ruby W. Anderson. She alleged that she is the beneficiary of the testamentary trust to the extent of two-thirds of its income. The guardian of the minor son of decedent consented to the approval of the compromise.

The settlement of a claim due the estate of a deceased person is within the discretionary powers of the executors and of the superior court sitting in probate. Upon appeal the judgment will not be disturbed in the absence of a clear showing of an abuse of discretion by the executors or the approving court. (*Estate of McAllister*, 134 Cal.App. 349, 353 [25 P.2d 507]; Prob. Code, § 578.) A compromise may be authorized by the court when it appears to be just and for "the best interest of the estate." (Prob. Code, § 578.)

There is nothing in the record to indicate an abuse of discretion or authority by the court below. The findings of fact are liberally supported by undisputed proof. The trust officer, who is vice-president of the bank, had during the preceding two years made a thorough investigation of the financial responsibility of the Cohn Company and of the guarantors of the note and had rejected two offers as full payment of the note. The compromise sum agreed to by the trust officer was approved by the trust committee composed of all the officers of the trust department and of the president, vice-president and three assistant cashiers of the bank. Also it was approved by the bank's finance committee. No specific objection to the compromise was alleged by appellant; neither did she deny the substantial allegations of the petition. She rested her case upon the proposition that she was opposed to the compromise regardless of the present financial responsibility of the Cohn Company or of the guarantors and upon her opinion that it is not to the best interest of the estate to accept the compromise offer.

The Cohn Company is in a desperate financial plight. As of March 31, 1944, its total liabilities were $2,877,743.79 while its assets were valued at $1,105,280.76. Those assets to the

extent of $738,412.68 are held as security for specified indebtedness in the sum of $735,923.74. Payment of the latter sum must be made in full before those assets can be applied to the payment of any other indebtedness of the Cohn Company. Other assets consisting of corporate shares valued at $356,868.08 were pledged to secure other debts in the sum of $348,960. The latter indebtedness must be paid before any of such corporate shares may be applied to the satisfaction of other creditors. If such assets of both groups should all be utilized in the discharge of the debts which they secure, there would then remain assets of a value of $31,600 with which to pay liabilities in excess of $1,750,000. In such event there would be sufficient assets to pay not to exceed 2 per cent of the other indebtedness of the Cohn Company.

The income of the Cohn Company for the last fiscal year was $66,762. All of this was paid out to creditors holding secured claims except $3,300. Out of the latter sum income tax in the sum of $2,286.29 was paid and $900 was disbursed for miscellaneous corporate expenses. This left a net surplus for the year in the sum of $113.71. Although the Cohn Company derives a taxable income from its Seventh Street property in the sum of $22,000 annually such sum must be paid to the holders of the first and second liens upon the property, leaving no provision for federal and state income taxes. The continuous pressure of such income taxes renders extremely doubtful the cohesiveness of the company's precarious assets. If the latter should vanish, the unsecured creditors would suffer a total loss.

The guarantors upon the Cohn Company note afford no basis for brighter hopes of realizing a greater sum than that of the compromise settlement. Mrs. Getz has already deceased leaving no estate. Mrs. Meyer has nothing. Some nine years ago she and her husband conveyed to the creditors of the Cohn Company all of their nonexempt assets. Both together are obligated to pay an income tax compromise settlement in the sum of $30,000. Should they default in the payment of any installment due upon this sum, the entire original liability in the amount of $220,000 would be restored to its incipient effectiveness. Both are indebted on numerous obligations besides the sum of $84,000 on which Mr. Meyer alone carries the liability. The total assets of Mr. Meyer are $7,284.30, while his liabilities exceed $89,000. In addition thereto he is liable as guarantor on the debts of the corpora-

tion in excess of $2,100,000. While he has an annual salary of $39,079.76 he is obligated for all of that except the sum of $9,079.76 which is his only fund for the maintenance of himself and family and the payment of personal obligations.

As to Mr. Getz, he likewise receives a fairly generous salary of $32,000 annually. Like Mr. Meyer he is also about sixty-five years of age. At the time of the compromise his assets aggregated about $11,500. His debts are about $28,000. Such debt is in addition to his liability as indorser of the notes which are secured by trust deeds on the Seventh Street property, and a repurchase' agreement. He became indebted on account of his income tax to the federal government in the sum of $180,000 which by compromise was reduced to $34,000, of which there is still due the sum of $20,000. A default in the payment of any installment due the government on that balance would result in a rescission of the compromise and the revival of the original debt. To the foregoing liabilities must be added his current taxes on his income to the federal and state governments as well as his property taxes.

Other complications were disclosed by the evidence but in view of the handicaps of the Cohn Company above detailed and the opinions of the trust committee and the finance committee of the bank the court below was in full measure warranted in approving of the compromise.

The order is affirmed.

McComb, J., concurred.

WOOD (W. J.), J.—I dissent. In my opinion it is an abuse of discretion to approve the compromise of a debt of $43,923.24 for only $1,164.23 when the debt is guaranteed by two men one of whom has a capacity to earn, and actually is receiving, a salary of $39,079.76 and the other the more than "fairly generous" salary of $32,000 per year. The extent of the income taxes being paid by the two guarantors weighs against the compromise rather than in its favor.